BOLLING G. ABERCROMBIE *vs.* CHARLES E. SPALDING
& another.

Suffolk.   November 29, 1892. — January 5, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Advances by a Partner to his Firm — Covenant to pay Firm's Debts — Liability
of Guarantor.*

A. covenanted with his partner B. to compromise and settle all the debts of the firm as shown on an annexed exhibit or on the books of the firm, and B. released to A. all his interest in the assets.   The agreement was made in contemplation of a possible settlement of the partnership affairs in insolvency, in which event the agreement was to be void.   The agreement was of the same date as a stipulation of C., a third party, guaranteeing to B. the performance by A. of his covenant.   The agreement and stipulation were apparently on the same paper, and both contracts were presumably part of a single transaction.   C. was the principal creditor of the firm, and had no other inducement to execute the guaranty than the fact that he was a creditor.   B. advanced to the firm, at different times, certain amounts entered on the books, some of which were entered with the word "loan" written on the same line.   B. had of the firm cash and clothing to a certain amount, as appeared on the books, except that the prices for clothing were not carried out.   B. accepted and relied upon the guarantee of C. as contained in the exhibit, and demanded both of A. and C. the sum claimed by him to be due thereunder.   This sum did not appear on the exhibit, and was larger than the sum claimed by C.   At the time of executing the agreement, B., on demand, divided with A. a sum which B. had collected of customers of the firm. *Held*, that C. was not liable under the guaranty for the advances by B. to the partnership.

CONTRACT upon a written guaranty.   The case was submitted to the Superior Court, and, after judgment for the defendants, to this court, on appeal, on agreed facts, in substance as follows.

William B. Phinney and Bolling G. Abercrombie, partners, entered into an agreement, dated August 28, 1889, wherein they stipulated:

" That the said firm is dissolved by mutual consent. That the said Phinney shall wind up the affairs of said firm, and the said Abercrombie, in consideration of the agreement of the said Phinney herein contained, hereby grants, bargains, sells, and assigns to the said Phinney all his right, title, and interest in and to the assets of every name and nature of said firm of Phinney and Abercrombie, including all bills and accounts receivable of said firm now outstanding.

" And the said Phinney hereby agrees that he will adjust, compromise, and settle all the debts and liabilities of said firm of Phinney and Abercrombie shown on 'Exhibit A' hereto annexed, or on the books of said firm ; also any and all other debts owing by said firm of Phinney and Abercrombie which have been contracted by the said Phinney, if there are any such debts, unless, through the failure of any of the creditors of said firm to accept the composition offered, it shall be deemed expedient to adjust the affairs of said firm in insolvency, within sixty days from the date hereof, then this agreement, as well as all other agreements and guaranties connected herewith, shall be null and void.

" And the said Phinney and Abercrombie do hereby respectively release each other from all claims of whatsoever name and nature either may have against the other, except the agreements contained in this instrument.

" And the said Abercrombie hereby agrees that he knows of no other indebtedness of said firm except such as appears on the books of said firm, or on the 'Schedule A' hereto annexed."

Exhibit A consisted of the names of sixteen creditors, and after the name of each creditor was written the amount due him. Then came the following guaranty :

" We, the undersigned, in consideration of the agreements entered into by the said Abercrombie in the foregoing agreement, and of the payment of one dollar, the receipt of which is hereby acknowledged, do hereby guarantee to the said Abercrombie the performance by the said Phinney of all the agreements and undertakings entered into by the said Phinney in the foregoing instrument.

" Witness our hands and seals this twenty-eighth day of August, A. D. 1889. Spalding, Elms, & Co. [Seal]."

The name of Spalding, Elms, & Co. was the first name in
" Exhibit A," and they were the largest creditors on the list, their
claim being $458.33.

The affairs of the firm were not settled in insolvency. The
plaintiff advanced to the firm, at different times, the sum of
$759.96, as appeared upon the books, all of which was used in
the firm's business, of which sum the sums of $250 advanced
March 17, 1888, $200 advanced August 20, 1888, $50 advanced
March 21, 1889, $50 advanced April 6, 1889, and $50 advanced
July 6, 1889, were entered upon the books with the word
" loan " written on the same line with the amounts. The plain-
tiff had of the firm cash and clothing to the amount of $520.86,
of which amount $253.43 was in cash and $267.43 was in cloth-
ing, as appeared upon the books. The prices for the clothing
were not carried out on the books, but at a fair price amounted
to the said sum of $267.43. All the above items of credit and
debit appeared on the account of B. G. Abercrombie on the
ledger of the firm, but the prices for clothing were not carried
out on the books at the date of " Exhibit A." The first item,
of $250, advanced March 17, 1888, opposite which was written
the word " loan," was money contributed by Abercrombie to
the business at the commencement of the partnership, in ac-
cordance with his agreement with Phinney. The sum of $250
which appeared on Phinney's account was raised on a note
which was paid by the firm money, and he afterwards contrib-
uted in cash the sum of $109.11, being all his contribution of
capital to the firm, and he drew out from the firm the sum of
$390.70.

The plaintiff accepted and relied upon the guaranty of the
defendants as contained in " Exhibit A," and he demanded both
of Phinney and the defendants the sum claimed by him to be
due thereunder. At the time of the execution of " Exhibit A,"
Phinney demanded of Abercrombie $85, collected by the latter
of customers of the firm. The matter was adjusted by Aber-
crombie then paying over to Phinney the sum of $42.50.

*T. E. Grover & F. Joy*, for the plaintiff.

*W. A. Knowlton*, for the defendants.

HOLMES, J. There is no doubt that advances by a partner to
his firm, other than contributions of capital, are accounted for

by the firm on the footing of debts, although postponed of course to the claims of other creditors. *Miller's River National Bank* v. *Jefferson*, 138 Mass. 111, 112. Lindl. Part. (5th ed.) 402. See *Whitcomb* v. *Converse*, 119 Mass. 38, 43. There is no doubt that such liabilities of the firm often are described as debts in commercial language, or that, in construing a commercial agreement, the question is what the words fairly mean, not whether they are used with strict legal propriety. We assume that an agreement by a continuing with a retiring partner to pay all the debts of the firm might appear from the context and the circumstances to apply to a debt in the general commercial sense due from the firm to the retiring partner, as was held in *Hobart* v. *Howard*, 9 Mass. 304. We assume that the same might be true even where, as here, the retiring partner surrenders all his interest in the assets, and that under some circumstances such a conveyance might be interpreted to mean a conveyance of his interest only in what would be divided as capital in a strict sense. *Hamer* v. *Giles*, 11 Ch. D. 942. *Austin* v. *Jackson*, 11 Ch. D. 942, n. Lindl. Part. (5th ed.) 320.

In the case at bar, in favor of the plaintiff's contention, there is the fact that the partner's covenant refers to " all the debts and liabilities " of the firm shown on the annexed exhibit, " or on the books of the firm." On the other hand, this agreement was of the same date as the guaranty in suit, seemingly on the same paper, and presumably both contracts were parts of a single transaction. The defendants were the principal creditors of the firm. At the same time they were entitled to a less sum than that claimed by the plaintiff as due to him. It does not appear that they had any other inducement to execute the guaranty than the fact that they were creditors, so that it is highly improbable that they or the plaintiff supposed that they were guaranteeing a debt which would be postponed to their own. The plaintiff's claim was not shown on the exhibit. The language of the partner's covenant was that he would " adjust, compromise, and settle " the debts referred to, — words obviously chosen with reference to other creditors than the covenantee. The agreement was made in contemplation of a possible settlement of the partnership affairs in insolvency, in which event the agreement was to be void. This fact alone

makes the plaintiff's construction improbable. The plaintiff releases to his partner all his interest in the assets. *Lesure* v. *Norris*, 11 Cush. 328, 330. Finally, at the time of executing the document, the plaintiff, on demand, divided a sum which he had collected of customers, — conduct not to be expected if he then was understood to have an outstanding claim. Dealing only with the particular instrument before us, we are of opinion that the defendants are not liable. See *Lambert* v. *Griffith*, 50 Mich. 286; *Patterson* v. *Martin*, 6 Ired. 111; 2 Bates Part. § 629.    *Judgment for defendants.*