NATHANIEL C. LOCKE *vs.* ALPHEUS C. LOCKE.

Essex.    March 26, 1896. — June 16, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Promissory Note — Partnership — Mistake in Adjustment of Accounts — Equity — Construction of Bill of Sale.*

If a promissory note is given by A. to B., his copartner, in settlement of a supposed balance due from A. to B. upon an adjustment of the partnership accounts, B. having sold his interest in the firm to a third person, and such settlement proceeds upon the mistaken and innocent assumption on the part of both that A. is liable for the whole amount of the excess of his account over that of B. instead of only for one half of it, A. is entitled in equity to be relieved from payment of the note, although the sale by B. of his interest may have operated as a dissolution of the firm.

A. gave B., his copartner, a promissory note in settlement of a supposed balance due from the former to the latter upon an adjustment of the partnership accounts, which proceeded upon the mistaken assumption that A. was indebted to B. in double the amount of his actual debt; and B. sold to C. his interest in the firm by a bill of sale which included book accounts "and indebtedness of every description due to said firm," receiving from C. a sum in cash and a promissory note for the balance secured by a mortgage of real estate. *Held,* upon a bill in equity by A. against B. for relief from payment of the note so given, that the account between the partners did not pass by the bill of sale to C.

BILL IN EQUITY, filed in the Superior Court on April 17, 1891, and amended February 16, 1893, alleging the following facts.

The plaintiff and the defendant have for many years been associated together in the business of manufacturing steam

regulators at Salem as equal partners, under the style of Locke Brothers ; the partnership has been dissolved by the mutual consent of the parties.

The plaintiff, for his part of the business of the firm, has been largely engaged in selling the manufactured goods in various parts of New England and elsewhere, and has had but little to do with the work of the factory of the partnership in Salem, and has had nothing to do with the books and accounts of the firm. These books have been kept entirely by the defendant, and have been in his control and possession up to January 12, 1891.

On January 10, 1891, the defendant offered and agreed to sell to Mark C. Felch, for the sum of $20,000, all his interest in all the real estate, tools, fixtures, machinery, stock in trade, and personal property of every description, belonging to and connected with the business of the firm of Locke Brothers, and including all book accounts, notes, and indebtedness of every description due to the firm. Felch agreed with the defendant to purchase all his interest in the copartnership, and to pay him therefor the sum of $20,000, and he then and there paid to him his check for $1,000 to bind the bargain until the bill of sale and deeds would be prepared to transfer all the estate and property by the defendant to Felch ; and January 17, one week from the day of sale, was fixed as the time for the passing of the papers.

The defendant, in accordance with and by virtue of the agreement, caused a bill of sale to be prepared, dated January 13, 1891, which was afterwards, on the payment of the consideration, on January 17, delivered to Felch, the description of the property sold being as follows : " All my interest in and to all the tools, fixtures, machinery, stock in trade, and personal property of every description belonging to and connected with the business of Locke Brothers, heretofore carried on on Franklin Street, in said Salem, and including all book accounts, notes, and indebtedness of every description due to said firm, my interest in all said property being one undivided half part thereof."

A day or two prior to January 17, the defendant stated to the plaintiff that he was indebted to him, according to the books of the business, in the sum of $3,600, and demanded of the plaintiff that he should pay or secure the amount of the indebted-

ness before the papers were passed transferring the defendant's interest in the business to Felch. The plaintiff, being ignorant as to the books of account, and as to his liability, if any, to the defendant, and believing his representations to be true, and relying upon his assurance that the books were correct, and that by them the plaintiff was indebted to the defendant, made a promissory note for $3,000, payable to him in three months from date, and indorsed by Felch, and delivered the same to the defendant in compliance with his demand towards the payment of the indebtedness which he asserted was justly due to him.

The bill alleged further that the representations made by the defendant to the plaintiff, and by which he was induced to make the note and procure the indorsement thereon, were false and fraudulent; that he was not indebted, if at all, in any such sum as $3,600, as stated by the defendant; that he had since ascertained that he was not indebted to the defendant at all; that if any indebtedness existed, it was to the firm of Locke Brothers; that the defendant having previously, on January 10, bargained and sold to Felch all his interest in the firm of Locke Brothers, he had no valid claim against the plaintiff; that the books of account of the firm were not properly and correctly kept; that they did not show the true state of the plaintiff's account, and did not show that he was indebted to the defendant in so large an amount as he stated to the plaintiff; that by the books, as the plaintiff had ascertained upon an examination which he had caused to be made since the note was given, he was not indebted on account of what he had withdrawn from the firm in the sum of $3,600, but a very much less sum; that, upon a just and fair statement of the dealings of the firm, and of the balancing of the accounts, there existed no indebtedness by the plaintiff to the defendant, or to the party to whom he had conveyed his interest in the firm; and that the plaintiff was not justly indebted to the defendant on the note.

The prayer of the bill was that the defendant might be restrained from negotiating, assigning, or transferring the note to any person or persons other than the plaintiff; that an account might be taken of all partnership matters between the parties, including the note; that the defendant might be ordered to

surrender the note to the plaintiff, and to pay whatever sum, upon an account taken, should be found due to the plaintiff; and for such other orders and decrees as justice might require.

The case was referred to a master, who found and reported the following facts.

The plaintiff and the defendant are brothers, and were partners from some time in the year 1870 until January, 1891. They carried on in Salem the business of manufacturing and selling steam regulators and other steam appliances. The plaintiff devoted his time chiefly to selling the manufactured goods, and to making inventions and improvements in the line of their manufacture. The defendant remained at the factory and office, attended especially to the finances of the firm, and kept the books.

Some time before the year 1891 dissatisfaction arose between the partners, and some efforts were made by them to effect a dissolution of the partnership, and a sale of all interest in the firm's property by one to the other, but these efforts were not successful.

Shortly before January 10, 1891, the plaintiff suggested to Mark C. Felch that the latter make an effort to buy out the defendant's interest in the firm, and on January 10 Felch came to Salem to inspect the property with a view to such purchase. The property of the firm consisted of real estate in Salem, tools, machinery, fixtures, stock in trade, promissory notes, book accounts, and cash. The plaintiff and the defendant were equal partners and equal owners of the partnership assets. Felch examined the property, and afterwards, on said January 10, in an interview between him and the defendant in the office of the firm, the defendant offered to sell to Felch his interest in the business and all the firm property, being an undivided half, for $20,000, and this offer Felch then and there accepted. In the same interview it was agreed between Felch and the defendant that $5,000 of the purchase money should be paid in cash, and the remaining $15,000 in the promissory note of Felch indorsed by the plaintiff. It was at the same time further agreed by Felch and the defendant, that Felch should come to Salem during the next week, when the papers necessary for the transfer should be executed and delivered, the purchase

money paid and the note given, and the transaction completed. Felch at this same interview, without any suggestion from the defendant, gave the latter his check for $1,000 as part of the $5,000, and to bind the bargain, but requested the defendant not to use it, but to hold it until he should come the next week. It did not appear whether Felch had sufficient money on deposit in the bank on which the check was drawn to meet it, but Felch was financially able to pay the check if it had been presented for payment, and it was accepted by the defendant. At the time of making this offer, the defendant told Felch what the firm property consisted of, enumerating the different parts substantially as given above, and he was to convey his interest in all there was of partnership property. All this bargain and agreement between Felch and the defendant was oral.

On January 15, the defendant said to the plaintiff that he should not sign any papers of transfer of his interest in the property to Felch until the plaintiff gave him his note for what he owed him, meaning on an adjustment of their individual accounts with the firm. The plaintiff asked how much this was, and the defendant told him $3,669. The plaintiff expressed surprise at the amount, and told the defendant he should want to have the accounts examined before he paid him anything in settlement. The defendant assured him that this amount was correct. The plaintiff did not at this time accede to this demand.

On January 17, Felch came to Salem to complete the sale, and met the defendant at the office of Felch's attorney. There were also present, besides the attorney, the plaintiff and one Kennedy.

The defendant now demanded that the note to be given for $15,000 should be secured by a mortgage of the real estate conveyed; and Felch requested the defendant to give to him an agreement in writing not to engage in Massachusetts in the kind of business which had been carried on by the firm. This demand and request were acceded to by Felch and the defendant respectively. The defendant then delivered to Felch a deed executed by the defendant of his undivided half of the firm's real estate situated in Salem, and a bill of sale of his undivided half of the personal property of the firm. The defendant also

executed and delivered to Felch an agreement not to engage in the business in Massachusetts. Felch paid the defendant $5,000 in cash, receiving back the check, and gave him a promissory note for $15,000, secured by a mortgage of the real estate conveyed.

The plaintiff at the same time gave to the defendant his promissory note for $3,000, indorsed by Felch, and promised the defendant to give him his note for $669, being the balance of the amount demanded of the plaintiff by the defendant, it being the intention of the parties that, upon the payment of this balance, errors, if any, found in the accounts should be corrected. This latter note was never given, and a suit is now pending between the plaintiff and defendant in this court to recover this balance. Little business was done by the firm between January 10 and 17. The defendant remained at the office, and Felch did not take possession until after receiving the deed and bill of sale. Since the sale the business has been continued by the plaintiff, his son, and Felch. During the week the plaintiff had an expert bookkeeper, one Patch, examining the books of the firm, and especially the individual accounts of the partners.

These individual accounts, kept by the defendant and balanced by him January 10, 1891, showed on the ledgers, the plaintiff's being on a new ledger recently opened, that the plaintiff had withdrawn from the funds of the firm $3,666.62 more than the defendant. The plaintiff was but little acquainted with accounts or methods of bookkeeping, and had left these matters almost entirely to the defendant, though the books and accounts were always accessible and open to him. The defendant had been accustomed to make up and give to the plaintiff at the beginning of each year a memorandum showing how each partner's account stood, but the plaintiff paid little attention to the matter until the last week. There had been no other adjustment of accounts, nor any settlement of the partnership affairs from the beginning. The plaintiff, when he gave the note for $3,000, on January 17, knew what the books showed as the amounts which had been withdrawn by him and by the defendant. The defendant, in stating to the plaintiff that he owed the defendant the amount mentioned, and in demanding payment of the same, and the plaintiff in giving the note and promising to pay the balance,

proceeded upon the assumption that the fact that he had withdrawn from the firm funds that sum in excess of what the defendant had withdrawn, showed that the plaintiff upon a settlement was indebted to the defendant to that amount. The defendant, in these matters, had no intention of deceiving or defrauding the plaintiff. They both acted upon the same mistaken belief and erroneous interpretation of what the books showed. After the note in question had been given, the plaintiff, on the same day, was informed by Patch that he ought not to pay the defendant the whole of the excess, but only one half, and on the next day, January 18, the plaintiff told the defendant that this mistake had been made. Steps were soon afterwards taken by the plaintiff to stop the negotiation of the note, and it is still in the hands or control of the defendant.

Felch indorsed this note, and knew what the defendant had stated concerning the plaintiff's account, and what the plaintiff gave the note for. In all the transactions, and in matters leading up to them, there was no conspiracy or connivance between Felch and the plaintiff, nor any unlawful or improper arrangement between them.

"It was contended by the plaintiff, at the hearing before me, that anything due from the plaintiff on his account, or on account of what he had withdrawn more than the defendant, passed by the bill of sale to Felch, under the head of book accounts and 'indebtedness of every description due to said firm.' But I am of opinion that the bill of sale did not have this effect, and find that neither Felch, nor the plaintiff, nor the defendant, at the time of the agreement and transfer, supposed or intended that anything coming from the plaintiff on the account was to, or did, pass to Felch."

The books were not skilfully kept, and their contents could not always be readily or clearly ascertained by one not very familiar with bookkeeping. But they were kept honestly by the defendant, and any inaccuracies contained in them were the results of accident or mistake, and not made intentionally.

By the sale to Felch it became unnecessary to take an account of the firm's assets, or make any adjustment of the affairs of the firm, except upon the individual accounts of the partners.

The master stated the account, finding that the excess of the

balance charged against the plaintiff over that against the defendant was $3,260.22; that one half of this amount, or $1,630.11, was the amount which was due from the plaintiff to the defendant upon an adjustment of their accounts, and the withdrawal of the defendant from the partnership; and that this sum, with interest thereon, from the date of filing the bill to the date of the report, amounting to $397.72, making in all the sum of $2,027.83, was the total amount due from the plaintiff to the defendant upon a full settlement of accounts between them.

The plaintiff's testimony, reported by the master, relating to the giving of the note in question was as follows:

" My brother came into the office, walked twice across the floor, and said, ' I will have you distinctly understand that I will sign no papers transferring any interest in this business until you give me a note indorsed by Mr. Felch for what you owe me.' I asked him how much it was. I think he said thirty-six hundred dollars, without repeating the sixty-nine dollars and odd cents, and I repeated it over, ' Thirty-six hundred dollars ! ' I was so astonished. He says, ' Yes, thirty-six hundred dollars.' I says, ' It can't be possible. We have been in business over twenty years, and have had no settlement, and we ought to have the books examined before I give you anything in the way of settlement.' But he said the books were correct, that they balanced, and I was owing him thirty-six hundred dollars. He should give no time to have the books examined up to this time. Mr. Patch, and Mr. Chandler, who is now our clerk, had commenced some examination of the books, but not sufficient except to show that they had found two or three mistakes, not very material. I had no further conversation, I think, with him about the note until the next day, when I asked him if three thousand dollars would not do, and any difference beyond that due him I would settle also, and he, I think, at that time gave me to understand he would take the note, and nothing more was said about the note, and after the papers were signed on Saturday, and the money, five thousand dollars, had been paid him, just before we left the office, I gave him the three thousand dollar note, supposing that it was due him."

The defendant's testimony on this point was as follows:

" *Q.* Now did you in the month of January have any talk with

him [the plaintiff] ? State the talk that you had in regard to selling out or buying out. *A.* Matters rested where I have said until one day he said if I would sell for $20,000, what about the books ? I said I would leave those, all the firm's accounts that were due us. But I said I had about $4,000 more than him in the business, and that I should want that.

" *Q.* What further talk was there at that time ? *A.* I don't recollect at that time particularly anything different from that.

" *Q.* Did you and he examine the books at that time ? *A.* I don't recollect at that time. I did show him the amount. The books had been balanced then, and I checked off some, showing a difference of $3,669. I showed him on the books, on the ledger. I gave him paper with the figures on it.

" *Q.* You did at that time examine the books, and gave your brother a statement ? *A.* Yes, sir. I took the two balances and subtracted one from the other, showed how much I had more than he."

After testifying to the interview with Felch in relation to the purchase of the defendant's interest in the business, the defendant further testified as follows :

" Next time I saw Mr. Felch was the Tuesday afterwards. I then took the ledger and showed him the balance, and showed him my brother's account, and told him in selling out my understanding was he owed me $3,669 if I sold out. That is, in selling out he was to pay me that.

" *Q.* Now when did you talk again with your brother ? *A.* Perhaps not before Saturday.

" *Q.* Do you remember a talk the next day ? *A.* He said he would give me a note for $3,000, and the difference he would settle with me."

Hearing upon the master's report, and exceptions of both parties thereto, before *Bishop*, J., who confirmed the report, and ordered a decree for the plaintiff in accordance therewith; and both parties appealed to this court.

*J. M. Raymond*, for the defendant.

*H. P. Moulton*, for the plaintiff.

MORTON, J. The findings of the master are not to be set aside unless, upon the evidence as reported, they are clearly erroneous. *Richards* v. *Todd*, 127 Mass. 167.

We think that the evidence well warranted the finding that the three thousand dollar note was given by the plaintiff and taken by the defendant in part settlement of a supposed balance of thirty-six hundred and sixty-nine dollars due from the plaintiff to the defendant on an adjustment of the partnership accounts, and that it proceeded on the mistaken and innocent assumption on the part of both that the plaintiff was liable for the whole amount of the excess of his account over that of the defendant, instead of only for one half of it. That being so, the plaintiff is entitled to the relief which he seeks, notwithstanding that the sale by the defendant of his interest may have operated as a dissolution of the firm. *Gould* v. *Emerson,* 160 Mass. 438. This view of the case disposes of the defendant's contention that the note was given as part of the consideration of the sale to Felch.

We think also that the finding that the account between the two partners did not pass by the bill of sale to Felch was correct. It is the intention of the parties as expressed in the bill of sale which is to be carried into effect. But where a latent ambiguity arises, the surrounding circumstances may be looked into in order to discover if possible the real intention of the parties. In the present case, the note in suit, the bill of sale, the mortgage and mortgage note, and the payment of the five thousand dollars in cash, all constituted parts of one and the same transaction. And though in a strict sense the overdraft of the plaintiff was a debt due to the firm, it is manifest, we think, that the language of the bill of sale referred to other debts and accounts than those between the two partners. Language almost if not quite as inclusive as that used here was construed in *Abercrombie* v. *Spalding,* 158 Mass. 32, not to include a debt due from the firm to one partner.

*Decree affirmed.*